### IN THE UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF PUERTO RICO

**Affidavit in Support of Criminal Complaint**

I, Steve Cazeau, a Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, depose and state as follows:

1. I am a Special Agent (SA) of the DEA and as such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), that is, an officer of the United States who is empowered to conduct criminal investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section, 2516.

2. I have conducted and assisted in investigations into the unlawful possession, possession with the intent to distribute, distribution of controlled substances, importation of controlled substances, and the associated conspiracies in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, 952, and 963. I have received detailed instructions and participated in various investigations concerning the unlawful importation and distribution of controlled substances, the laundering and concealment of drug proceeds, the illegal use of communication facilities by drug traffickers in furtherance of their criminal activities and conspiracies to engage in these activities. I have experience and training in conducting surveillance operations, analyzing telephone records, interviewing witnesses, executing arrest warrants, participating in physical surveillance and other investigative techniques. The investigations in which I have participated have resulted in the arrest and prosecution of individuals who have smuggled, received and distributed controlled substances, including marijuana and cocaine as well as the seizure of those illegal drugs and proceeds of the sale of those illegal drugs.

3. Because of my personal participation in this investigation, and because of information provided to me by other agents and officers, and my personal observations, I am familiar with the facts and circumstances of this investigation. My experience in investigating drug offenders, my education, my conversations with senior drug agents and chemists, and my specialized training formed a basis of the opinions and conclusions set forth below which I drew from the facts set forth herein.

4. The information contained in this affidavit is based on my personal knowledge and observations during the course of this investigation; on information conveyed to me by other law enforcement officials; and on my review of records, documents, and other physical evidence obtained during this investigation. This affidavit is not intended to include every fact observed by me or known by the government.

5. Based on my training and experience, my knowledge of this case and my discussions with other law enforcement officers, I am familiar with narcotic traffickers' and money launderers' methods, schemes, and operations, and know:

### Probable Cause

6. The Drug Enforcement Administration (DEA) Ponce District Office has been working in conjunction with the Puerto Rico Police Bureau (PRPB) Guayama Intelligence Unit in Guayama, Puerto Rico (PR) to target violent Drug Trafficking Organizations (DTOs) in the Calimano Public Housing Project (PHP) and Barrio Borinquen in Guayama, PR. Agents have been targeting violent subjects and locations associated with violent encounters.

7. On October 07, 2025, at approximately 2:30 p.m., the Puerto Rico Police Bureau (PRPB) Guayama Drug Unit received information from an anonymous tipster that a residence inside the Barrio Borinquen in Guayama, PR (17.983170, -66.121100) was being utilized as both a

stash house and drug point for selling controlled substances.

8. During early October, the PRPB Guayama Drug Unit conducted surveillance on the aforementioned residence to corroborate the information received from the anonymous tipster. Throughout surveillance, PRPB Agents observed a subject known to them from previous encounters as "Sandro" (identified as Sandro RODRIGUEZ-Sanchez, hereinafter RODRIGUEZ-Sanchez) and another subject later identified as Jose Manuel FERNANDEZ-Rosario (FERNANDEZ-Rosario).

9. On multiple occasions during the surveillance of the residence, PRPB Agents observed RODRIGUEZ-Sanchez and FERNANDEZ-Rosario entering and exiting the aforementioned residence while conducting hand-to-hand transactions with various unidentified individuals.

10. On October 10, 2025, PRPB Agents observed unidentified individuals approach RODRIGUEZ-Sanchez outside the residence at which point RODRIGUEZ-Sanchez handed the unidentified individuals clear plastic baggies with a white powder which based on Agent's training and experience appeared to be cocaine. Subsequently, FERNANDEZ-Rosario approached the unidentified individuals and received what appeared to be U.S. currency from them. FERNANDEZ-Rosario then returned to the residence and gave the U.S. currency he had just received to RODRIGUEZ-Sanchez who stored it. At this point the unidentified individuals would leave the premises.

11. On October 14, 2025, PRPB Agents again conducted surveillance outside the same residence where they again witnessed RODRIGUEZ-Sanchez hand what, based on their training and experience, PRPB agents identified as crack cocaine in a clear plastic tube to unidentified individuals. RODRIGUEZ-Sanchez then received what appeared to be U.S. currency from the unidentified individuals which RODRIGUEZ-Sanchez would promptly put away.

12. On October 16, 2025, PRPB Agents obtained a state level search warrant signed by Honorable Judge Angel Rodriguez-Torres to search the residence where they observed the suspected drug transactions. On the same date at approximately 5:00 p.m., PRPB Agents executed the search warrant at the residence.

13. Upon arrival to the residence, PRPB Agents observed that the door was open. PRPB Agents announced themselves as police and then proceeded to enter the residence where they encountered RODRIGUEZ-Sanchez, FERNANDEZ-Rosario, in the living room of the house along with an unidentified male who fled the scene and evaded capture. Also in the same living room, PRPB Agents observed a loaded black Glock 22 pistol with a red handle strap bearing serial numbers EZY275 on the frame and EZY556 on the slide. The Glock 22 was in plain view on top of the living room table. At this time, RODRIGUEZ-Sanchez and FERNANDEZ-Rosario were detained and shown the search warrant and each were read their Miranda Rights.

14. PRPB Agents deployed a K9 who is trained to detect narcotics, which alerted positive in various locations of the residence for the presence of controlled substances. At this time, PRPB Agents began their search of the residence where on top of the microwave in the kitchen they observed a single rifle round and a tan Glock 22 bearing serial number SG775 behind said microwave. In the kitchen cabinets, PRPB Agents observed a small blue potato chip bottle with yellow cap containing 60 clear capsules with purple caps containing a white powdery substance of suspected crack cocaine.

15. In the living room area, PRPB Agents observed a portable foldable bed which on top of the mattress was a black bag containing six loaded pistol magazines. Under the pillow they observed a loaded drum magazine. In the same living room, PRPB Agents observed a loaded black Ruger EC9S pistol with serial number obliterated.

16. In a separate bedroom under the sheets of the bed, PRPB Agents observed two loaded rifles, one black and tan AR-15 Hebron bearing serial number 24305610 with an extra magazine and one AK Century Arms C39V2 pistol bearing serial number C39P2A01428. Agents also observed a loaded black drum magazine and five loaded pistol magazines on the bed.

17. Also, on top of the bed, inside of a black plastic bag, agents found a large clear Ziplock bag containing 134 small clear baggies containing a white powdery substance suspected to be cocaine. Also, inside the black plastic bag, PRPB Agents observed a large clear Ziploc bag containing 1,053 aluminum decks of varying colors of suspected heroin, however, a field test proved positive for fentanyl.

18. In another large clear Ziploc bag inside the black plastic bag PRPB Agents observed 12 capsules with various cap colors containing a green leafy substance of suspected marijuana. Additionally, a silver kitchen scale was observed on the bed. PRPB Agents also observed a black case with a large amount of U.S. Currency inside and a large blue potato chip bottle containing one large Ziploc bag with a white rocky substance of suspected crack cocaine.

19. In a gray plastic bag on top of the same bed, PRPB Agents found eight boxes of ammunition of various caliber rounds. In the same room, PRPB Agents observed a bucket containing a black loaded Desert Eagle pistol bearing serial number 99302991.

20. At approximately 5:55 p.m., agents concluded with the search warrant and upon arrival at the PRPB Guayama Police Headquarters, PRPB Agents conducted field tests of the seized drugs, which showed positive for marijuana, cocaine, and fentanyl. Furthermore, the black Glock 22 with red handle strap which was found in plain view on the kitchen table contained an added metal chip behind the backplate, which enables the firearm to fire fully automatic, like a machine gun. Agents observed that the backplate contained damage consisted with someone

prying it off in order to place the silver chip inside, then reattaching the backplate. Based on Agents' experience, firearms altered this way can function like a machine gun.

21. Federal agents from the Ponce DO responded to interview RODRIGUEZ-Sanchez and FERNANDEZ-Rosario separately. Agents read RODRIGUEZ-Sanchez his Miranda rights, to which RODRIGUEZ-Sanchez understood and agreed to answer questions. RODRIGUEZ-Sanchez stated that he lives in the residence, which is registered to his deceased father. RODRIGUEZ-Sanchez admitted knowledge that the evidence found in the residence was inside, however RODRIGUEZ-Sanchez stated that he was not the owner.

22. A law enforcement database check on RODRIGUEZ-Sanchez revealed that he was convicted of a crime to a term of imprisonment exceeding one year in 2016 and 2018. A law enforcement database check on FERNANDEZ-Rosario revealed that he was convicted of a crime to a term of imprisonment exceeding one-year in 2003.

23. Based on my training and experience I know that firearms are not manufactured in Puerto Rico, therefore any firearms seized during the execution of state search warrant on October 16, 2025 must have traveled in interstate commerce in order to arrive in Puerto Rico.

**Rest of Page Intentionally Left Blank**

## CONCLUSION

24. Based on the aforementioned facts, I believe there is probable cause that Sandro RODRIGUEZ-Sanchez violated title 21 U.S.C. § 841(a)(1) (possession with intent to distribute) and title 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime); and that both RODRIGUEZ-Sanchez and FERNANDEZ-Rosario violated title 18 U.S.C. § 922(g) (possession of a firearm by a prohibited person, felon).

_____
Steve Cazeau
Special Agent
Drug Enforcement Administration

*(Digitally signed by STEVE CAZEAU, Date: 2025.10.17 19:59:18 -04'00')*

Sworn **by phone** this **17th** day of October 2025, in San Juan, Puerto Rico, **at 8:42 PM in accordance with the requirements of Fed. R. Cr. P. 4.1**

_____
Hon. Marcos E. López
United States Magistrate Judge
District of Puerto Rico